IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

GREGORY JACKSON                                                   PLAINTIFF

VS.                                          CIVIL ACTION NO.: 5:16-CV-0024-KS-MTP

VERMEER MANUFACTURING COMPANY and
DOE DEFENDANTS 1 THRU 5                                      DEFENDANTS

VERMEER MANUVATURING COMPANY's MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.       Introduction

Under Mississippi law, defendant Vermeer Manufacturing Company is not liable for

plaintiff's injuries because the undisputed facts demonstrate that this action falls within the ambit

of the assumption-of-the-risk provision of Miss. Code. Ann. § 11-1-63.  *See* Miss. Code Ann.

§ 11-1-63 (d); *Materials Transp. Co. v. Newman*, 656 So. 2d 1199, 1203 at n.1 (Miss. 1995)

(noting "that the legislature has reestablished… the assumption of the risk doctrine as" a bar to

recovery in enumerated products liability actions).  Vermeer moves this Court for Summary

Judgment because Plaintiff assumed the risk that resulted in his injury.  Alternatively, Vermeer

moves for Summary Judgment because Plaintiff cannot establish his claims in light of his

spoliation of the baler and moves for Partial Summary Judgment of Plaintiff's failure to warn

claims because the uncontroverted evidence shows Plaintiff did not read Vermeer's warnings and

instructions.

### II.       Factual Background

Plaintiff Gregory Jackson lives in Natchez, Mississippi (Jackson Depo. at p. 7, lines 18-

20, Mot. Ex. "A").  In 2012, in addition to his regular employment, Jackson was raising cattle

and cutting hay on property within Adams County (Jackson Depo. at p. 8, lines 18-24; p. 10, line

17, through p. 11, line 11; p. 12, lines 7-10; p. 21, lines 19-25, Mot. Ex. "A").

On the morning of October 30, 2012, Jackson was baling hay with his Vermeer 5410

Rebel Baler (Jackson Depo. at p. 11, lines 12-14, Mot. Ex. "A"; Complaint).  The hay began to

clog in the machinery so, approximately four times, Jackson turned the equipment off and

cleared it out with his hands and a pocket knife (Jackson Depo. at p. 27, line 9, through p. 28,

line 14; p. 33, line 16, through p. 38, line 10, Mot. Ex. "A").  As he had on previous occasions,

Jackson turned the equipment off before reaching into the bale chamber and working on the clog

because he knew it was hazardous to come in contact with the machine's moving parts (Jackson

Depo. p. 31, line 13, through p. 32, line 7; p. 40, line 7, through p. 41, line 8, Mot. Ex. "A").

The hay clogged again, and Jackson attempted to manually dislodge the hay, first with

the baler turned off, but then turned the baler on (Jackson Depo. at p. 28, lines 16-25; p. 38, lines

11-18, Mot. Ex. "A").  With the equipment on, Jackson reached his left hand into the baler's

chamber, towards the moving belts and roller, to cut the hay with his pocket knife (Jackson

Depo. p. 28, lines 20-25; p. 38, lines 17-18; p. 45, lines 11-20, Mot. Ex. "A").  While performing

this maneuver, Jackson's jacket became caught in the moving belts, pulling his hand into the

machinery (Jackson Depo. p. 29, lines 3-9; p. 38, lines 18-20; p. 48, lines 6-12, Mot. Ex. "A").

Emergency responders freed Jackson's hand from the baler and transported him to a

hospital (Jackson Depo. p. 29, line 20, through p. 30, line 1, Mot. Ex. "A").  Doctors conducted

multiple surgeries, ultimately amputating his left hand (Jackson Depo. p. 59, line 23 through p.

60, line 16, Mot. Ex. "A").

It is undisputed that, if the equipment had been turned off while Jackson's hand was in the baler, his hand would not have been caught in the machinery (Jackson Depo. p. 51, lines 4-21, Mot. Ex. "A").

When Plaintiff was discharged from the hospital in November 2012, the baler was still in Plaintiff's possession. (Jackson Depo. p. 73, lines 11-17, Mot. Ex. "A").  In November 2012, Plaintiff's attorney took photographs of the subject baler at Plaintiff's home.  (Jackson Depo. p. 70, lines 5-7, Mot. Ex. "A"; Plaintiff's Responses to Defendant's Second Set of Interrogatories at No. 2, Mot. Ex. "B").  In or around January 2013, Plaintiff "voluntarily surrender[ed]" the baler to the financer, Kubota Credit Corp. (Jackson Depo. p. 72, line 2, through p. 73, line 14, Mot. Ex. "A").  Sometime after January 31, 2013, Kubota sold the baler, after it gave Plaintiff notice of the pending sale.  (January 16, 2013 letter from Kubota to Plaintiff, Mot. Ex. "C").  At no time did Plaintiff or his attorney give Vermeer notice of the accident, the upcoming repossession and sale of the baler, or any opportunity to inspect the baler.  Jackson filed his Complaint nearly three years after his accident and after the baler was repossessed.  Plaintiff no longer knows the location of the subject baler (April 11, 2017, email from Plaintiff's attorney, Mot. Ex. "D").  Vermeer's effort to locate the baler by attempting to track the serial number was unsuccessful.

Plaintiff's Complaint alleges product liability, breach of UCC warranties, and negligence. Vermeer moves for summary judgment on all three counts.

### III.    Legal Argument

#### A.  Summary judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  Application of Rule 56 is not strictly limited to the disposition of legal questions.  *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 839 (S.D. Miss. 2010), *citing Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material."  *Id*.  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial."  *See Celotex*, 477 U.S. at 323; *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In this diversity suit, the substantive law of Mississippi applies. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *McSwain*, 689 F. Supp. 2d at 840.

### B.  Jackson assumed the risk of reaching into the baler while it was in operation.

Under Mississippi law, in product liability actions a designer, manufacturer, or seller is not liable for an allegedly defective product if the plaintiff: "(i) had knowledge of a condition of the product that was inconsistent with his safety; (ii) appreciated the danger in the condition; and (iii) deliberately and voluntarily chose to expose himself to the danger in such a manner to register assent on the continuance of the dangerous condition."  Miss. Code Ann. § 11-1-63 (d).  Here, there is no genuine issue of material fact as to any of these elements and, therefore, Vermeer is entitled to summary judgment.

### 1.  In this case, assumption of the risk is a complete defense.

Generally, under Mississippi law, "the concept of assumption of the risk is subsumed in [the] comparative fault doctrine.  In other words, assumption of the risk on the part of the

plaintiff merely goes to the percentage of fault attributable to the plaintiff." *Donald v. Triple S Well Serv.*, 708 So. 2d 1318, 1325 (Miss. 1998) (citations omitted). However, products liability claims are "specifically governed by statute, and a claimant, in presenting his case, must pay close attention to the elements of the cause of action and the liability limitations enumerated in the statute." *Williams*, 921 So. 2d at 1273. Specifically, under the products liability statute, assumption of the risk provides a complete defense. *See* Miss. Code Ann. § 11-1-63 (d); *Materials Transp. Co. v. Newman*, 656 So. 2d 1199, 1203 at n.1 (Miss. 1995).

The relevant statute applies "in any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty, except for commercial damage to the product itself." Miss. Code Ann. § 11-1-63. Under the statute, assumption of the risk provides a complete defense "[i]n any action alleging that a product is defective pursuant to paragraph (a) of this section[.]" Miss. Code Ann. § 11-1-63 (d). The referenced paragraph encompasses defective design and manufacture, failure to warn, and breach of express warranty. Miss. Code Ann. § 11-1-63 (a).

Here, Jackson alleges product liability "by virtue of strict liability or breach of warranty," based on "a deviation in the specifications, and/or lack of adequate warnings or instructions, and/or a defective design, and/or a breach of an express warranty," a breach of UCC warranties, and "negligence in the design and/or manufacture and/or warnings" of the product (*see* Complaint). Because each of these claims is within the scope of Miss. Code Ann. § 11-1-63 (d), assumption of the risk affords Vermeer a complete defense.

### 2. There is no genuine issue of material fact as to any element of this defense.

Under the assumption-of-the-risk provision, Vermeer is not liable if Jackson "(i) had knowledge of a condition of the product that was inconsistent with his safety; (ii) appreciated the

danger in the condition; and (iii) deliberately and voluntarily chose to expose himself to the danger in such a manner to register assent on the continuance of the dangerous condition." Miss. Code Ann. § 11-1-63 (d).

The Supreme Court of Mississippi has analyzed the defense of assumption of the risk in a strikingly similar case and upheld the trial court's grant of summary judgment in favor of the manufacturer. *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1044 (Miss. 2007). In *Green*, the plaintiff was injured when he approached the moving chain on a piece of farm equipment called a mule boy, and slipped and fell into the moving chain. *Id.* The plaintiff testified that when he got off the tractor, he knew the mule boy was still running, he knew the chains were moving when he approached the machine, he knew the machine could be dangerous, and he knew if he got too close, he could be pulled into the moving parts. *Id.* The court reasoned that the plaintiff ignored that danger when he approached the mule boy and lost his balance, coming into contact with the moving parts. *Id.* Specifically, the court referred to Green's deposition testimony where it was revealed "that he understood and appreciated the danger, [that] the moving chains were open and obvious to Green, [and that] Green proceeded to approach the mule boy without first turning off the machine, even though he appreciated that it was a dangerous situation." *Id.* For these reasons, the court held summary judgment to be appropriate under the assumption of the risk defense.

Like in *Green*, assumption of the risk should bar Jackson's claims. First, the uncontroverted evidence establishes that Jackson knew that it was dangerous to reach his hand into the baler while it was in operation. Jackson testified that, prior to the incident, he observed the belts moving and saw that the hay became tightly lodged between the belts and the rollers where his hand eventually was caught (Jackson Depo. p. 42, lines 2-13, Mot. Ex. "A"). Jackson

further testified that on previous occasions and earlier on the day of the incident, he turned the

baler's power off before addressing the issue of hay buildup because he recognized that it was a

hazard to reach into the moving parts.

> Q. Why would you stop the machine each time before going back to the rear of the baler?
>
> A.   Because I would have to cut the -- in my attempt to cut the hay off, I didn't want to hit the belts and have it moving while I'm trying to cut it.
>
> Q.   Because you knew that reaching into the moving belts could be hazardous?
>
> A.   Yeah.  Getting close to it, yes.
>
> . . . .
>
> Q.   But if you were to have to reach into the bale chamber and have your body parts near those belts, you knew that the power should be off; is that right?
>
> A.   Yeah, I wanted it to be off.

(Jackson Depo. p. 40, lines 7 - 15; p. 41, lines 4 – 8, Mot. Ex. "A").

Second, the evidence demonstrates that Jackson appreciated the danger of the moving

parts in the baler.  On multiple occasions, Jackson took the precaution of turning the baler's

power off before attempting to dislodge hay from its equipment (Jackson Depo. at p. 27, line 9,

through p. 28, line 14; p. 31, line 13, through p. 32, line 7; p. 33, lines 16-24; p. 34, lines 8-12; p.

35, lines 5-7; p. 36, lines 5-9; p. 37, line 22, through p. 38, line 5; p. 40, line 7, through p. 41, line

8, Mot. Ex. "A").  And he testified that he did so because "in [his] attempt to cut the hay off, he

didn't want to hit the belts and have it moving while [he's] trying to cut it."  (Jackson Depo. at p.

40, lines 7-12, Mot. Ex. "A").[1]  Moreover, the moving belts and roller were open and obvious to

---

[1] Plaintiff may point to testimony where he stated that he did not understand that the belts were moving so fast that he would not be able to pull his hand out of the baler "fast enough" (Jackson Depo., p. 43, lines 16-22, Mot. Ex. "A") or that he did not understand the hazards warned about in the operator's manual (Jackson Depo., p. 52, lines 18-23, Mot. Ex. "A").  While he may not have appreciated the consequence—that he would not be able to remove his hand from the

Jackson; he saw "the belts moving quickly" and realized that hay was able to be caught tightly in

the belts and rollers (Jackson Depo. at p. 39, lines 18-21; p. 42, lines 2-25; p. 43, lines 1-4, Mot.

Ex. "A").  Therefore, Jackson appreciated the danger that ultimately resulted in his injury.

Third, Jackson deliberately and voluntarily exposed himself to the danger of the moving

baler parts.  Jackson testified that he decided to address the issue of hay buildup by turning the

baler on, and then reaching into the powered machinery to try and cut the remaining piece of hay

with a pocket knife (Jackson Depo. p. 28, lines 16-25; p. 38, lines 11-18; p. 45, lines 11-20, Mot.

Ex. "A").  The facts of this case are even more compelling than in *Green* because Jackson did

not slip, fall, or otherwise accidentally come into contact with the moving parts; rather, he

deliberately reached into the moving belts.  (Jackson Depo. p. 46, lines 8-10, 17-20, Mot. Ex.

"A")

Under these circumstances, there is no genuine issue of material fact as to any of the

three elements of Miss. Code Ann. § 11-1-63 (d).  Because Plaintiff assumed the risk of reaching

into a powered baler while the belts and roller were moving, the elements of this statute are

satisfied and Vermeer is entitled to summary judgment on all of plaintiff's claims.

### C.  Plaintiff Cannot Meet His Burden to Establish the Baler Was Defective Because He Failed to Preserve the Baler.

Expert testimony is a necessary component of a Mississippi Product Liability Act case

involving a complex product.  *E.g., Cothren v. Baxter Healthcare Corp.*, 798 F. Supp. 2d 779,

782 (S.D. Miss. 2011).  "In order to prevail on claims under the MPLA [the plaintiff] must

establish by a preponderance of the evidence that: (1) the product was manufactured or designed

---

moving parts—he appreciated the danger, "knew that reaching into the moving belts could be hazardous," and he previously shut off the machine before working in the bale chamber because he did not want the belts and roller moving while cutting the hay from the belts and roller. (Jackson Depo., p. 40, lines 7-15; p. 41, lines 4-8, Mot. Ex. "A").

in a defective manner, contained inadequate warnings, or breached an express warranty that was

justifiably relied on when purchased; and (2) this defective condition rendered the product

unreasonably dangerous to the user or consumer; and (3) the defective and unreasonably

dangerous condition of the product proximately caused the damages for which recovery is

sought; and (4) the defective condition existed at the time the product left control of the

manufacturer." *Id.*, *citing* Miss. Code Ann. § 11-1-63.

Plaintiff's accident occurred on October 30, 2012.  Plaintiff retained an attorney who

took photographs in November 2012.  Plaintiff "voluntarily surrender[ed]" the baler to the

financer, Kubota Credit Corp in January 2013.  (Jackson Depo. p. 72, line 2, through p. 73, line

14, Mot. Ex. "A").  At no time did Plaintiff put Vermeer on notice of his accident, allow

Vermeer an opportunity to inspect the baler, or locate the baler for inspection by Plaintiff's

experts.

Plaintiff will be unable to meet his burden to show that the product was defective when it

"left the control of the manufacturer or seller" because Plaintiff allowed the subject baler to be

repossessed prior to any experts inspecting the machine.[2]  Miss. Code § 11-1-63(a).  Plaintiff's

expert Gary Huitink testified that it is "always important to see the machine" to, among other

things, glean evidence of what happened, assess the condition of the machine, and determine if

the machine was modified at any point.  (Gary Huitink deposition, p. 15, lines 24-25; p. 16, lines

1-22, Mot. Ex. "E").  These determinations were not able to be made from the poor quality

photographs, and instead Mr. Huitink has to rely on assumptions.  (*Id.* at p. 16, lines 23-25; p. 17,

---

[2] "Spoliation of evidence is the destruction or the significant and meaningful alteration of
evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).  An unwillingness to seek
preservation of a vehicle in possession of a third-party for the anticipated opponent to inspect
amounts to spoliation.  *Wallace v Ford*, No. 3:11-CV-567-CWR-FKB, S.D. Miss., June 28,
2013), LEXIS 91164, at *18-19.

lines 1-25; p. 18, lines 1-25, Mot. Ex. "E").  Because Plaintiff knowingly surrendered the machine, the experts retained in this case did not have an opportunity to inspect the machine and therefore will be precluded from testifying that the baler was defective when it left Vermeer's control.  Because Plaintiff cannot satisfy this element of his case, Vermeer is entitled to summary judgment.

## D.  Plaintiff's Failure to Warn Claim Cannot Survive Because He Did Not Read the Warnings.

Should the Court rule that plaintiff's claims survive Miss. Code Ann. § 11-1-63 (d) summary judgment, at least plaintiff's failure to warn claim should be dismissed.  A plaintiff may not prevail on a failure to warn claim alleging defective warnings and instructions if the plaintiff did not read and rely on the allegedly defective warning.  *Union Carbide Corp. v. Nix*, 142 So. 3d 374, 390 (Miss. 2014) (stating "the plaintiff must have read and relied upon the defective warning to complain of it").  "Simply put, where a plaintiff alleges that the warnings provided were inadequate, the plaintiff must show he relied on those warnings."  *Mine Safety Appliance Co. v. Holmes*, 171 So. 3d 442, 453 (Miss. 2015.   If the plaintiff fails to do so, the defendant is entitled to a judgment as a matter of law.  *Id.*

In *Mine Safety Appliance*, it was undisputed that the product came with instructions, but the plaintiff had proffered no evidence that he had read the instructions, or that the alternative instructions would have altered plaintiff's behavior.  The court stated, "[i]nadequate warnings cannot serve as the proximate cause of injuries where adequate warnings would have resulted in the same injuries."  *Id.*  The court found that, even if the instructions would have read exactly as plaintiff proposed, there was no evidence plaintiff would have behaved differently or avoided his injuries.  *Id.*  The court found, "where a plaintiff fails to show the warning provided was the proximate cause of his injury, the defendant must prevail as a matter of law."  *Id.*

10

Here, Mr. Jackson testified that he did not read the operators manual and read only one of

the many safety signs placed on the machine:

Q.   Did you read the operator's manual?

A.   No, ma'am.

Q.   Did you read any of the warnings or the decals on the machine?

A.   There was one on the side when you raised the door how to put the latch to keep it
from closing on you if you.

(Jackson Depo., p. 6, lines 16-22, Mot. Ex. "A").

Q.   There's a warning in the manual that states:   Use shutdown procedure before
servicing, cleaning, repairing, or transporting the machine.   Had you ever read that
before?

A.   No, ma'am.

Q.   Do you agree that if you would have used the shutdown procedure before attempting
to clear this clog that the belts would not have been moving and your hand would not
have been caught?

A.   Correct.

Q.   Did you read the warning in the manual that states:   Belts, rollers, and chains can cut
off hand or arm?

A.   No, ma'am.

Q.   Did you read the warning that stated: Failure to follow any of the preceding safety
instructions or those that follow within this manual could result in serious injury or
death?

A.   No, ma'am.

Q.   Did you read the warning that stated: Never try to unplug the baler while it is
running?

A.   No, ma'am.

Q.   Did you read the warning that states: Always disengage power takeoff; shut off
tractor engine; set parking brake and remove key before working on baler for any reason,
including servicing, inspecting, or unplugging the machine?

A.   No, ma'am.

Q.   You didn't read those warnings, correct?

A.   Correct.

(Jackson Depo, p. 51-52, lines 12-25, 1-7, Mot. Ex. "A")  Failure to read the warnings and

instructions provided with machinery was Jackson's common practice, as he did not read the

manuals for his other equipment, such as tractors and lawn mowers.  (Jackson Depo. p. 20, lines

5-10, Mot. Ex. "A")

Moreover, plaintiff testified that he knew how to operate the baler and did not need any

additional information regarding the proper and safe operation of the baler.

Q.   After you purchased it and received the training, do you feel like you understood
how to operate the baler?

A.   Yes.

Q.   Did you have any questions about the operation that were unanswered?

A.   No, ma'am.

Q.   Did you need any additional information on how to operate the baler?

A.   No, ma'am.

Q.   You feel like you had all the information you needed to operate the baler correctly
and safely?

A.   Yes.

(Jackson Depo., p. 17, lines 15-24; p. 18, lines 5-8, Mot. Ex. "A")  Notably, plaintiff agreed that,

had he followed the instruction to shut down the machine before reaching into the baler, his

accident would not have occurred.  (Jackson Depo, p. 51, Mot. Ex. "A").

Plaintiff cannot show that he relied on the warnings and instructions Vermeer provided

with the baler and therefore cannot prevail on a claim that those warnings were inadequate or

that alternative warnings would have altered his behavior such that he would have avoided his accident and injuries.  As such, plaintiff's failure to warn claims should be dismissed.

## IV.    Conclusion

Because the Mississippi legislature recognizes assumption of the risk as a complete defense in product liability actions, and because the uncontroverted evidence establishes each element of this defense, Vermeer is entitled to summary judgment on all three counts of Plaintiff's Complaint.  Alternatively, because plaintiff did not read the warnings and instructions Vermeer provided with the baler, Vermeer is entitled to summary judgment on plaintiff's failure to warn claim.

Dated: June 14, 2017

BY:   *s/Caroline K. Ivanov*_____

Mark D. Jicka (MSB No. 8969)
Caroline K. Ivanov (MSB No. 104215)
WATKINS & EAGER PLLC
400 East Capitol Street (39201)
P. O. Box 650
Jackson, MS  39205-0650
Telephone: (601) 965-1900
Email: mjicka@watkinseager.com
Email: civanov@watkinseager.com

-and-

George W. Soule (*pro hac vice*)
Melissa R. Stull (*pro hac vice*)
SOULE & STULL LLC
Eight West 43rd Street, Suite 200
Minneapolis, MN 55409
Telephone: (612) 353-6403
mstull@soulestull.com
gsoule@soulestull.com

**ATTORNEYS FOR DEFENDANT
VERMEER MANUFACTURING
COMPANY**

## CERTIFICATE OF SERVICE

I, Caroline K. Ivanov, the undersigned attorney, do hereby certify that I have filed the above notice using the Court's ECF system which automatically sent notification to all parties of record

This the 14th day of June, 2017.

s/*Caroline K. Ivanov*
Caroline K. Ivanov
